The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CIAHRA-LANISE FRANCK,<br>Plaintiff,<br>v.<br>T-MOBILE USA, INC. and PETER OSVALDICK,<br>Defendants. | No. 2:24-cv-00234-RAJ<br>**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY CASE**<br>NOTE ON MOTION CALENDAR:<br>July 24, 2024 |



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 1

A. The T&Cs Require Arbitration of Consumer Disputes. .......... 1

B. Ms. Franck Agreed to the T&Cs. .......... 2

C. The Parties' Meet and Confer Efforts. .......... 3

III. ARGUMENT .......... 4

A. Ms. Franck Should Be Compelled To Arbitrate Her Claims. .......... 4

1. Ms. Franck Agreed to Arbitrate Her Claims. .......... 5

2. Ms. Franck's Claims Fall Within the Scope of the Arbitration Provision. .......... 8

B. Ms. Franck Delegated Any Arbitrability Dispute to the Arbitrator. .......... 9

1. The T&Cs Delegation Clause Is Clear and Unmistakable. .......... 9

2. Arguments Regarding Enforceability Should Be Delegated to the Arbitrator. .......... 11

C. The Court Should Stay the Case Pending Arbitration. .......... 12

IV. CONCLUSION .......... 12




Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**


*Alvarez v. T-Mobile USA, Inc.*,
2011 WL 6702424 (E.D. Cal. Dec. 21, 2011) .... 4

*Arnold v. Arnold Corp.*,
920 F.2d 1269 (6th Cir. 1990) .... 5

*AT & T Technologies, Inc. v. Commc'ns. Workers of Am.*,
475 U.S. 643 (1986) .... 8

*Baird v. Charter Commc'ns, Inc.*,
2020 WL 11626081 (C.D. Cal. June 1, 2020) .... 11

*Bennett v. T-Mobile USA, Inc.*,
2024 WL 229580 (W.D. Wash. Jan. 22, 2024) .... 4, 11

*Boardman v. Pac. Seafood Grp.*,
822 F.3d 1011 (9th Cir. 2016) .... 5

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .... 10, 11

*Britton v. Co-Op Banking Grp.*,
4 F.3d 742 (9th Cir. 1993) .... 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .... 5, 8, 9

*Comptroller of Treasury of Md. V. Wynne*,
575 U.S. 542 (2015) .... 4

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .... 5

*Destinations by Design, LLC v. T-Mobile USA, Inc.*,
2010 WL 1687752 (S.D. Ohio Apr. 26, 2010) .... 4

*Doe v. Project Fair Bid Inc.*,
2011 WL 3516073 (W.D. Wash. Aug. 11, 2011) .... 6

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) .... 1, 5, 10




Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) ....................7, 8

*Goldberg v. Sweet*,
488 U.S. 252 (1989)....................4

*Hauenstein v. Softwrap Ltd.*,
2007 WL 2404624 (W.D. Wash. Aug. 17, 2007) ....................6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....................9, 10, 11

*In re Wyze Data Incident Litig.*,
2020 WL 6202724 (W.D. Wash. Oct. 22, 2020) ....................10

*J.A. v. Microsoft Corp.*,
2021 WL 1723454, (W.D. Wash. Apr. 2, 2021), report and recommendation adopted, 2021 WL 1720961 (W.D. Wash. Apr. 30, 2021)....................10

*LeBoeuf v. NVIDIA Corp.*,
833 F. App'x 465 (9th Cir. 2021) ....................11

*Letizia v. Prudential Bache Sec., Inc.*,
802 F.2d 1185 (9th Cir. 1986) ....................5

*McGinnis v. T-Mobile USA, Inc.*,
2009 WL 4824002 (W.D. Wash. Dec. 9, 2009) ....................4

*Mehler v. Terminix Int'l Co. L.P.*,
205 F.3d 44 (2d Cir. 2000)....................5

*Meyer v. T-Mobile USA, Inc.*,
836 F. Supp. 2d 994 (N.D. Cal. 2011) ....................4

*Mohammad v. T-Mobile USA, Inc.*,
2018 WL 6249910 (E.D. Cal. Nov. 29, 2018)....................4

*Moore v. T-Mobile USA, Inc.*,
2012 WL 13036858 (E.D.N.Y. Sept. 28, 2012), aff'd 548 F. App'x 686 (2d Cir. 2013) .........4

*Moreno v. T-Mobile USA, Inc.*,
2023 WL 401913 (W.D. Wash. Jan. 25, 2023)....................4, 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................8

*Mundi v. Union Sec. Life Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009) ....................7



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*New Prime Inc. v. Oliveira*,
586 U.S. 105 (2019) .....9

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) .....7

*Operating Eng'rs Pension Tr. v. Cecil Backhoe Serv., Inc.*,
795 F.2d 1501 (9th Cir. 1986) .....6

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013) .....11

*Owings v. T-Mobile USA, Inc.*,
978 F. Supp. 2d 1215 (M.D. Fla. 2013) .....4, 11

*Ozormoor v. T-Mobile USA, Inc.*,
354 F. App'x 972 (6th Cir. 2009) .....4

*Panchal v. T-Mobile USA, Inc.*,
2024 WL 2293180 (M.D. Fla. May 21, 2024) .....4, 11

*Preston v. Ferrer*,
552 U.S. 346 (2008) .....5

*Raebel v. Tesla, Inc.*,
451 F. Supp. 3d 1183 (D. Nev. 2020) .....7

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) .....9

*Riensche v. Cingular Wireless LLC*,
2006 WL 3827477 (W.D. Wash. Dec. 27, 2006) .....7

*Roby v. Corp. of Lloyd's*,
996 F.2d 1353 (2d Cir. 1993) .....5

*Rodriguez v. T-Mobile USA, Inc.*,
2023 WL 6593786 (S.D. Cal. Sept. 28, 2023) .....4, 11

*Schmidt v. Samsung Elecs. Am., Inc.*,
2017 WL 2289035 (W.D. Wash. May 25, 2017) .....10

*Smith v. Spizzirri*,
144 S. Ct. 1173 (2024) .....12

*United Steelworkers of Am. v. Am. Mfg. Co.*,
363 U.S. 564 (1960) .....11



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Whaley v. T-Mobile, USA, Inc.*,
2013 WL 5155342 (E.D. Ky. Sept. 12, 2013) ....4

**State Cases**

*Am. Express Centurion Bank v. Stratman*,
172 Wn. App. 667 (2012) ....6

*Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*,
139 Wn. App. 743 (2007) ....6

*Keystone Land & Dev. Co. v. Xerox Corp.*,
152 Wn.2d 171 (2004) ....6

*M.A. Mortenson Co. v. Timberline Software Corp.*,
140 Wn.2d 568 (Wash. 2000) ....6

*McKee v. AT & T Corp.*,
164 Wn.2d 372 (2008) ....6

*Townsend v. Quadrant Corp.*,
173 Wn.2d 451 (2012) (*en banc*) ....7, 8

*Veith v. Xterra Wetsuits, L.L.C.*,
144 Wn. App. 362 (2008) ....6

**Federal Statutes**

9 U.S.C.
§ 1 ....4
§ 2 ....4, 5
§ 3 ....12
§ 4 ....5

**Other Authorities**

AAA Consumer Arbitration Rules, R-14 at
https://adr.org/sites/default/files/Consumer%20Rules.pdf ....10

T-Mobile's Terms and Conditions at www.T-Mobile.com/terms-condition ....3



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

Plaintiff Ciahra Franck ("Plaintiff" or "Ms. Franck") became a T-Mobile USA, Inc. ("T-Mobile") customer in December 2016. At that time and in the intervening eight years, Ms. Franck repeatedly agreed to T-Mobile's Terms and Conditions ("T&Cs") which govern her relationship with T-Mobile. By accepting these T&Cs, Ms. Franck agreed to arbitrate "any and all claims or disputes in any way related to or concerning the agreement . . . including any billing disputes." At issue in this case are claims stemming from Ms. Franck's contract with T-Mobile, specifically her payment for wireless services. The Court should compel arbitration of Ms. Franck's claims for two reasons:

***First***, T-Mobile's agreement with Ms. Franck requires arbitration of any claims or disputes related to T-Mobile's services, including the billing disputes raised by her complaint. Ms. Franck repeatedly agreed to be bound by the broad arbitration provision in the T&Cs. She cannot dispute her claims fall within the agreement to arbitrate.

***Second***, to the extent Ms. Franck challenges the enforceability of the arbitration provision, the arbitration agreement requires an arbitrator, and not the Court, to decide all threshold issues of arbitrability, including the validity and enforceability of the arbitration provision.

## II. BACKGROUND

### A. The T&Cs Require Arbitration of Consumer Disputes.

Ms. Franck became a T-Mobile customer in December 2016. Dkt. 1 ¶ 5. As a T-Mobile customer, Ms. Franck repeatedly agreed to T-Mobile's T&Cs and the mandatory arbitration provision contained therein. Declaration of Judy Sanchez ("Sanchez Decl.") ¶¶ 4, 12-14. When Ms. Franck first agreed to the T&Cs in 2016, the T&Cs' preamble informed customers: "Please read these Terms & Conditions ('T&Cs'), which contain important information about your relationship with T-Mobile, including mandatory arbitration of disputes between us, instead of class actions or jury trials." *Id.*, Ex. A at 1. The T&Cs go on to state in bold, capitalized font: "YOU AND WE EACH AGREE THAT … ANY AND ALL CLAIMS OR DISPUTES IN ANY



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION[.]" *Id.* at 13-14. The arbitration provision also provides: (1) the arbitration agreement is governed by the Federal Arbitration Act ("FAA"); (2) the American Arbitration Association ("AAA") will administer the arbitration, subject to its rules; (3) the arbitrator can award the same damages and relief as a court, including attorneys' fees; and (4) customers can opt out of arbitration by providing T-Mobile notice within 30 days from the date the customer activated the particular line of service. *Id.* at 13–14.

Since Ms. Franck initiated her account in 2016, T-Mobile has periodically updated its T&Cs. Sanchez Decl. ¶ 4-10. Although the language has changed slightly, each version of the T&Cs contains a mandatory arbitration clause with substantially similar language, including the current version of the T&Cs—from May 2023—which applies to this lawsuit. *Id.*, Exs. A-F.

**B. Ms. Franck Agreed to the T&Cs.**

Customers can accept the T&Cs either in writing or verbally. *See, e.g.*, Sanchez Decl., Ex. F at 2–4. Customers also accept the T&Cs by activating, using, or paying for a service or device. *See, e.g.*, *id.* Ms. Franck accepted T-Mobile's T&Cs, specifically the arbitration provision, both by signing agreements with T-Mobile and by "activating, using, or paying for" T-Mobile services. *Id.* ¶¶ 12-14.

Ms. Franck first agreed to the T&Cs when she assumed responsibility for her account (ending in 5080) on December 13, 2016. Sanchez Decl. ¶ 4. T-Mobile's records reflect that when she assumed responsibility for the account, the customer service representative she was speaking with would have read to her from the following standard script: "By taking responsibility of the existing line(s), you must agree to be bound by T-Mobile's Terms and Conditions of Service, including the dispute resolution provision …" *Id.* Ms. Franck agreed and assumed responsibility for the account. *Id.*

Ms. Franck then leased T-Mobile devices on at least two occasions—July 10, 2018 and January 26, 2020. *Id.* Exs. H &J. Both times, Ms. Franck signed equipment leasing agreements



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

and Equipment Installment Plans via DocuSign. *Id.* ¶ 12-13; Exs. G-J. The agreements expressly incorporated the T&Cs' arbitration provision reiterating "WE AND YOU EACH AGREE THAT … ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATES TO OR CONCERNING THIS AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, EQUIPMENT, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT." *Id.* Exs. H & J.

Since December 13, 2016, T-Mobile provided Ms. Franck with more than a dozen receipts incorporating the T&Cs' arbitration provision: "T-Mobile REQUIRES ARBITRATION OF DISPUTES . . . For details see T-Mobile's Terms and Conditions at www.T-Mobile.com/terms-conditions." *Id*. Ex. K. T-Mobile most recently updated the T&Cs on May 15, 2023. *Id.* Ex. F. In April 2023, all active T-Mobile account holders were sent notice via email or SMS text message of the updated May 2023 T&Cs, which explained that account holders accept the May 2023 T&Cs by continuing their service. *Id.* ¶ 10. Ms. Franck continued using her T-Mobile service after the May 15, 2023 T&Cs went into place. *Id.* Ms. Franck was also provided with receipts incorporating T-Mobile's May 2023 T&Cs on September 26, 2023 and October 26, 2023. *Id.* Ex. K at 27-32.[1] Finally, Ms. Franck signed a bill linking to the May 2023 T&Cs and attached it as an exhibit to her Complaint. Dkt. 5 at 3.

Each version of the T&Cs in place since Ms. Franck opened her account has contained an opt-out provision, allowing customers to opt out of arbitration. *See, e.g.*, Sanchez Decl. ¶¶ 5-10, Exs. A–F. Ms. Franck has never opted-out of arbitration. *Id*. ¶ 15.

**C. The Parties' Meet and Confer Efforts.**

Counsel for T-Mobile appeared in this action on June 3, 2024. Dkt. 12. T-Mobile's counsel contacted Ms. Franck that evening by email asking to set up a call and flagging that the

[1] Because Ms. Franck agreed to the May 2023 T&Cs, they govern this dispute. But under any version of the T&Cs in place since Ms. Franck assumed responsibility for her account in 2016, the result would be the same. *See* Sanchez Decl. Exs. A-F (each containing substantially similar broad arbitration provision covering "any and all claims or disputes … including any billing disputes").



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

parties' relationship is governed by T-Mobile's T&Cs, including its mandatory arbitration provision. Declaration of Rachel Herd ¶ 2. The parties spoke on the phone on June 11, 2024. *Id.* ¶ 3. During the call, counsel for T-Mobile raised the issue of arbitration. *Id.* Ms. Franck did not take a position as to whether she would voluntarily move her claims to arbitration. *Id.* Following the call, counsel for T-Mobile resent Ms. Franck a link to the T&Cs and provided the relevant language. *Id.* ¶ 4. On June 16, 2024, Ms. Franck responded stating she would not agree to arbitration. *Id.* ¶ 5. On June 17, 2024, the parties had another call and Ms. Franck confirmed her position. *Id.*

## III. ARGUMENT

### A. Ms. Franck Should Be Compelled To Arbitrate Her Claims.

Courts in the Ninth Circuit (and across the country) routinely compel arbitration of claims subject to T-Mobile's T&Cs pursuant to the FAA. *See, e.g.*, *Bennett v. T-Mobile USA, Inc.*, 2024 WL 229580, at *6 (W.D. Wash. Jan. 22, 2024); *Moreno v. T-Mobile USA, Inc.*, 2023 WL 401913, at *6 (W.D. Wash. Jan. 25, 2023); *Panchal v. T-Mobile USA, Inc.*, 2024 WL 2293180, at *3 (M.D. Fla. May 21, 2024); *Rodriguez v. T-Mobile USA, Inc.*, 2023 WL 6593786, at *4 (S.D. Cal. Sept. 28, 2023); *Mohammad v. T-Mobile USA, Inc.*, 2018 WL 6249910, at *4 (E.D. Cal. Nov. 29, 2018); *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1225 (M.D. Fla. 2013); *Whaley v. T-Mobile, USA, Inc.*, 2013 WL 5155342, at *4 (E.D. Ky. Sept. 12, 2013); *Moore v. T-Mobile USA, Inc.*, 2012 WL 13036858, at *7 (E.D.N.Y. Sept. 28, 2012), aff'd 548 F. App'x 686 (2d Cir. 2013); *Meyer v. T-Mobile USA, Inc.*, 836 F. Supp. 2d 994, 1003 (N.D. Cal. 2011); *Alvarez v. T-Mobile USA, Inc.*, 2011 WL 6702424, at *7 (E.D. Cal. Dec. 21, 2011); *Destinations by Design, LLC v. T-Mobile USA, Inc.*, 2010 WL 1687752, at *8 (S.D. Ohio Apr. 26, 2010); *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009); *McGinnis v. T-Mobile USA, Inc.*, 2009 WL 4824002, at *8 (W.D. Wash. Dec. 9, 2009).

The FAA applies to the T-Mobile T&Cs because a contract for telecommunication services affects interstate commerce. *See* 9 U.S.C. §§ 1–2; *Goldberg v. Sweet*, 488 U.S. 252, 254–55 (1989), abrogated on other grounds by *Comptroller of Treasury of Md. V. Wynne*, 575



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

U.S. 542, 555 (2015) (telecommunications industry constitutes interstate commerce); *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 47 (2d Cir. 2000). The T&Cs also explicitly state that the FAA governs the agreement. *See, e.g.*, Sanchez Decl., Exs. A-F; *see also Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (applying FAA's procedural rules based on choice-of-law clause).

"The court's role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted). When both elements exist, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration" on the issues they have agreed to arbitrate. *Id.* (internal quotations omitted) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (citing 9 U.S.C. §§ 2, 4). As explained below, both elements are satisfied, and the Court should compel Ms. Franck to arbitrate her claims.[2]

**1. Ms. Franck Agreed to Arbitrate Her Claims.**

In determining whether the parties have agreed to arbitrate, the Court should "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In particular, a court should look to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1018 (9th Cir. 2016) (citation omitted). Washington law controls here since Plaintiff's billing address is located in Washington. Sanchez Decl. ¶ 16, Ex. F at 8 (T&Cs provide for application of law of state in which customer's billing

[2] Ms. Franck also named T-Mobile's CFO, Peter Osvaldik, as a defendant in this action. Jurisdictions across the country uphold a non-signatory employee's right to invoke an arbitration clause defensively in a case arising out of his acts on behalf of his signatory employer. *See, e.g.*, *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1282 (6th Cir. 1990); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993); *see also* Sanchez Decl., Ex. F (requiring arbitration of disputes with T-Mobile's agents). Ms. Franck's claims against Mr. Osvaldik are likewise subject to arbitration. *Id.*



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

address is located); *see also McKee v. AT & T Corp.*, 164 Wn.2d 372, 383 (2008) (stating that Washington courts generally enforce contract choice of law provisions).

Under Washington law, contract formation requires an objective manifestation of mutual assent, rather than the less precise subjective intent of the parties. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177 (2004) (*en banc*) ("Washington follows the objective manifestation test for contracts."). A contract is formed by any words or conduct which, under the circumstances, would lead a reasonable person to conclude that the offer had been accepted. *See, e.g., Am. Express Centurion Bank v. Stratman*, 172 Wn. App. 667, 673 (2012) (use of a credit card, if sufficiently detailed and itemized, constitutes acceptance of terms clearly stated in a cardmember agreement); *Veith v. Xterra Wetsuits, L.L.C.*, 144 Wn. App. 362, 366 (2008) ("Acceptance is an expression (communicated by word, sign, or writing to the person making the offer) of the intention to be bound by the offer's terms"); *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 765 (2007) ("The existence of mutual assent may be deduced from the circumstance" and "[s]ignatures of the parties are not essential to the determination.").

Further, Washington law assumes consumers have read the contract they accepted; a consumer cannot avoid contractual obligations by failing to read the agreement. *See Operating Eng'rs Pension Tr. v. Cecil Backhoe Serv., Inc.*, 795 F.2d 1501, 1505 (9th Cir. 1986) ("A party who signs a contract is bound by its terms regardless of whether he reads it or considers the legal consequences of signing it."); *see also M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 584 (Wash. 2000) (en banc) (finding "it was not necessary for [plaintiff] to actually read the agreement in order to be bound by it."). Accordingly, courts consistently enforce agreements where customers have notice of the existence of standardized terms, even if they are not read or understood. *See, e.g., M.A. Mortenson*, 140 Wn.2d at 583-85; *Doe v. Project Fair Bid Inc.*, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) ("This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."); *Hauenstein v. Softwrap Ltd.*, 2007 WL 2404624, at *2-3, 6 (W.D. Wash. Aug. 17, 2007) (enforcing arbitration



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

agreement because plaintiff "manifested his assent to the License Agreement by 'clicking' the appropriate box"); *Riensche v. Cingular Wireless LLC*, 2006 WL 3827477, at *2 (W.D. Wash. Dec. 27, 2006) (compelling arbitration where plaintiff "was required to agree to the Terms online"). Even where "there is no actual notice of contract terms, an offeree is still bound by the provision if he or she is on inquiry notice of the term and assents to it through the conduct that a reasonable person would understand to constitute assent." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016) (applying Washington law) (internal quotations and citation omitted).

Ms. Franck cannot reasonably dispute her assent to the T&Cs. Indeed, she alleges she signed up for T-Mobile's services in December 2016, which required her to consent to the T&Cs. Dkt. 1 ¶ 5. "Having already admitted that [Plaintiff] entered into the Agreement with [T-Mobile], Plaintiff[] cannot now claim that [they] never assented to the Agreement." *Raebel v. Tesla, Inc.*, 451 F. Supp. 3d 1183, 1189 (D. Nev. 2020). T-Mobile's records confirm, in securing her wireless services, Ms. Franck repeatedly agreed to arbitrate any disputes with T-Mobile. Sanchez Decl. ¶¶ 11-15, Exs. G-J. Ms. Franck accepted the T&Cs when initiating T-Mobile service. *Id.* ¶¶ 4, 12-14. And she electronically signed multiple agreements incorporating the T&Cs. *Id.*, Exs. G-J. Ms. Franck also assented to the T&Cs by using and paying for T-Mobile services for many years, including after she received notice of the May 2023 update to the T&Cs. *Id.* ¶¶ 4, 10. Because Ms. Franck repeatedly assented to T-Mobile's T&Cs, she is bound by the arbitration provision and must arbitrate her claims.

Ms. Franck is also bound to arbitrate regardless of her express assent (evidence of which exists in abundance in this case, as outlined above) based on equitable estoppel. *See Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870–71 (9th Cir. 2021). "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045-46 (9th Cir. 2009) (internal quotation marks and citation omitted); *see also Townsend v. Quadrant Corp.*, 173 Wn.2d 451, 460 (2012) (*en banc*). Ms. Franck's claims against T-Mobile— including for



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

breach of contract—are based exclusively on T-Mobile's provision of phone services pursuant to its T&Cs. Dkt. 1 ¶¶ 4-11, 14-15, 19-21. Ms. Franck cannot obtain the benefits of the T&Cs while avoiding her arbitration obligations contained in the same contract. *See, e.g.*, *Franklin*, 998 F.3d at 870–71 ("The doctrine of equitable estoppel prevents a party from playing fast and loose with its commitment to arbitrate, honoring it when advantageous and circumventing it to gain undue advantage.") (internal alteration & citation omitted); *Townsend*, 173 Wn.2d at 461 (stating "equitable estoppel may require a nonsignatory to arbitrate a claim if that person, despite never having signed the agreement knowingly exploits the contract in which the arbitration agreement is contained.") (internal quotations and citation omitted). For this independent reason, Plaintiff should be compelled to honor her agreements to arbitrate disputes with T-Mobile.

**2. Ms. Franck's Claims Fall Within the Scope of the Arbitration Provision.**

The FAA reflects a "liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Arbitration should be denied only when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 650 (1986) ( citations omitted). "In the absence of any express provision excluding a particular grievance from arbitration ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* at 654 (internal quotation marks & citation omitted). The Ninth Circuit recognizes arbitration provisions encompassing "[a]ny dispute, controversy[,] or claim" reach "broad and far" in scope, *Chiron Corp.*, 207 F.3d at 1131, and parties "routinely use[]" such clauses "to secure the broadest possible arbitration coverage," *Britton v. Co-Op Banking Grp.*, 4 F.3d 742, 745 (9th Cir. 1993).

Here, the arbitration provision broadly encompasses "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION[.]" Sanchez Decl., Ex. F at 13; *see also id.*, Exs. A-E (each containing broad language subjecting "any and all claims" to arbitration). Ms. Franck's claims are all rooted in the allegation that T-Mobile improperly suspended service of Ms. Franck's account, refusing to accept a "negotiable instrument" she claims to have tendered in lieu of paying for said service.[3] *See* Dkt. 1 ¶¶ 6, 8. As Ms. Franck acknowledges, these claims stem directly from T-Mobile's services and T-Mobile's billing practices. *See, e.g.*, Dkt. 1 ¶¶ 4-11. Accordingly, Ms. Franck's claims fall within the broad scope of the T&Cs' arbitration provision and are subject to arbitration.

**B. Ms. Franck Delegated Any Arbitrability Dispute to the Arbitrator.**

Because a valid agreement to arbitrate binds Ms. Franck and encompasses the present dispute, the Court should grant this Motion. *See Chiron Corp.*, 207 F.3d at 1131–32. Any arguments Ms. Franck may present as to the enforceability of the arbitration provision must be decided by the arbitrator, not the Court.

**1. The T&Cs Delegation Clause Is Clear and Unmistakable.**

"A delegation clause gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111-12 (2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019) (quoting *Rent-A-Ctr.*, 561 U.S. at 68–69). "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.* at 69. The T&Cs clearly and unmistakably delegate arbitrability to the arbitrator in two ways.

[3] Plaintiff's complaint fails to state a cognizable legal claim. In the event Defendants' motion to compel is denied, it intends to move to dismiss Plaintiff's complaint.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*First*, the May 2023 T&Cs expressly delegate threshold questions to the arbitrator. Those T&Cs state: "The arbitrator will have the power to rule on their own jurisdiction, including any issues concerning the existence, validity, or scope of either this Agreement or the arbitration clause, including whether any claim is subject to arbitration." Sanchez Decl., Ex. F at 7. The Court should enforce this express delegation provision.

*Second*, all versions of the T&Cs delegate gateway questions to the arbitrator by incorporating the AAA's rules. *Id*. Exs. A-F. The AAA's Consumer Arbitration Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* AAA Consumer Arbitration Rules, R-14 available at https://adr.org/sites/default/files/Consumer%20Rules.pdf. Incorporation of AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"). Accordingly, incorporation of the AAA rules delegates to the arbitrator the responsibility to decide arbitrability issues, such as any potential unconscionability challenge, as other judges in this district have repeatedly held. *See, e.g., J.A. v. Microsoft Corp.*, 2021 WL 1723454, at *8 (W.D. Wash. Apr. 2, 2021), report and recommendation adopted, 2021 WL 1720961 (W.D. Wash. Apr. 30, 2021); *In re Wyze Data Incident Litig.*, 2020 WL 6202724, at *3– 4 (W.D. Wash. Oct. 22, 2020); *Schmidt v. Samsung Elecs. Am., Inc.*, 2017 WL 2289035, at *6 (W.D. Wash. May 25, 2017).

Because the parties delegated arbitrability issues to the arbitrator pursuant to the T&Cs and the AAA rules, the Court should compel arbitration and need not consider the scope of the arbitration provision. *See Henry Schein*, 586 U.S. at 67-68.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**2. Arguments Regarding Enforceability Should Be Delegated to the Arbitrator.**

Because the parties delegated arbitrability issues to the arbitrator under AAA rules, the Court must compel arbitration and allow the arbitrator to resolve any purported issues of arbitrability or enforceability. *See Henry Schein, Inc*, 586 U.S. at 69 ("if a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue"); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075 (9th Cir. 2013); *see also LeBoeuf v. NVIDIA Corp.*, 833 F. App'x 465, 467 (9th Cir. 2021) ("the Supreme Court requires enforcement of [delegation] clauses"). This includes challenges to the delegation clause. *See, e.g.*, *Brennan*, 796 F.3d at 1132 (issue of unconscionability may be delegated to the arbitrator); *Baird v. Charter Commc'ns, Inc.*, 2020 WL 11626081, at *5 (C.D. Cal. June 1, 2020) (accord).

Indeed, the United States Supreme Court has held, in no uncertain terms, that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator" in a delegation clause, as here, "a court may not override the contract . . . That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless. That conclusion follows . . . from [this Court's] precedent." *Henry Schein, Inc.*, 586 U.S. at 68; *see, e.g.*, *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568–69 (1960) ("Arbitration should have been ordered" where an "agreement ... submit[ted] all grievances to arbitration, not merely those which the court will deem meritorious.").

Courts routinely enforce the delegation clause in T-Mobile's T&Cs over objections of unenforceability or unconscionability. *See, e.g.*, *Moreno*, 2023 WL 401913, at *6; *Bennett*, 2024 WL 229580, at *8; *Rodriguez*, 2023 WL 6593786, at *2; *Panchal*, 2024 WL 2293180, at *3. In any case, any argument regarding unconscionability fails on the merits because Ms. Franck cannot show the T&Cs, including the arbitration agreement, are procedurally or substantively unconscionable (let alone both, as she must). *See Owings*, 978 F. Supp. 2d at 1223 (T-Mobile arbitration agreement not unconscionable); *Bennett*, 2024 WL 229580, at *10 (delegation provision not unconscionable); *Rodriguez*, 2023 WL 6593786, at *4 (same).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**C. The Court Should Stay the Case Pending Arbitration.**

The FAA provides that, once satisfied that the suit should be moved into arbitration, a court "shall on application of one of the parties stay the trial of the action." 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 144 S. Ct. 1173, 1178 (2024) (when a lawsuit "involves an arbitrable dispute . . . § 3 of the FAA compels the court to stay the proceeding"). Because Ms. Franck asserts claims within the scope of an enforceable arbitration agreement, the Court should stay her claims pending arbitration.

## IV. CONCLUSION

The Court should grant Defendants' motion and compel Ms. Franck to arbitrate her claims against them and otherwise stay this action.

DATED this 26th day of June, 2024.

Davis Wright Tremaine LLP
Attorneys for Defendants T-Mobile USA, Inc.
and Peter Osvaldik

By: *s/ Rachel H. Herd*
Rachel H. Herd, WSBA #50339
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Tel: 206.622.3150
Fax: 206.757.7700
Email: rachelherd@dwt.com

I certify that this memorandum contains 3,962 words, in compliance with the Local Civil Rules.