HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CIAHRA-LANISE FRANCK,<br><br>               Plaintiff,<br><br>               v.<br><br>T-MOBILE USA, INC. and PETER OSVALDIK,<br><br>               Defendants. | CASE NO. 2:24-cv-00234-RAJ<br><br>ORDER |

## I.    INTRODUCTION

THIS MATTER is before the Court on defendants T-Mobile USA, Inc. and Peter Osvaldik's Motion to Compel Arbitration and Stay Case. Dkt. # 15.

For the reasons set forth below, the Court **GRANTS** defendants' motion and **ORDERS** this case **STAYED** pending arbitration proceedings.

ORDER - 1

## II.     BACKGROUND

Plaintiff Ciahra Franck ("Plaintiff" or "Ms. Franck"), a *pro se* litigant, filed her lawsuit against defendants T-Mobile USA, Inc. ("T-Mobile") and Peter Osvaldik ("Osvaldik") (collectively, "defendants") following a contractual dispute regarding payment for telecommunications services. Dkt. #1, ¶¶ 5. The Court sets forth the relevant facts below.

In 2016, Ms. Franck and T-Mobile executed a contract wherein T-Mobile agreed to provide telephone and internet services to Ms. Franck for a monthly price. *Id*. The contract contained a Terms & Conditions ("T&Cs") section, the language of which forms the thrust of the instant dispute. The T&Cs included an arbitration provision, which stated the following in bold, capitalized font:

> YOU AND WE EACH AGREE THAT . . . ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES . . . INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.

Dkt. # 17, pp. 18-19. Additionally, the arbitration provision noted that: (1) the Federal Arbitration Act ("FAA") governs the arbitration agreement; (2) the American Arbitration Association ("AAA") will administer the arbitration subject to its rules; (3) the arbitrator can award the same relief as can a court; and (4) a customer may opt out of arbitration by providing T-Mobile notice within thirty days from the date the customer activated service. *Id.* at pp. 18-20.

T-Mobile updated its T&Cs on May 15, 2023, and the language regarding arbitration and dispute resolution remained virtually unchanged. *Id.* at pp. 173-180. T-Mobile informed its customers of this update the prior month, when all active T-Mobile

account holders received either an email or SMS text message explaining that continuation of services indicates an assent to be bound by its T&Cs. *Id.* at p. 3. A declaration from T-Mobile's custodian of records reflects that Ms. Franck continued to use her T-Mobile services after the most recent T&Cs became effective. *Id*.

On February 20, 2024, Ms. Franck filed her lawsuit against T-Mobile and Osvaldik, T-Mobile's Chief Financial Officer, asserting numerous causes of action, including breach of contract and a violation of Washington's implied duty of good faith and fair dealing. Dkt. #1, ¶¶ 15-18. These claims stem from the allegation that T-Mobile improperly suspended service of her account and refused to accept a "negotiable instrument" she claims to have tendered in lieu of making her monthly payment. *Id.*, ¶¶ 6, 8.

### III.   LEGAL STANDARD

Because the FAA requires courts to "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed, the FAA limits court involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotations omitted). The party opposing arbitration bears the burden of showing that the agreement is not enforceable. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000); *Rodriguez de Quijas v. Shearson/Am. Express., Inc.*, 490 U.S. 477, 483 (1989).

When both elements exist, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration" on the issues they have agreed to arbitrate. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (italics in original).

## IV.     DISCUSSION

The court finds that the arbitration provision quoted above is valid. Specifically, there is no dispute that Ms. Franck consented to the T&Cs containing the provision at issue. Additionally, her claims fall within the scope of the arbitration provision.

### A.     Existence of a Valid Arbitration Agreement

Ms. Franck repeatedly consented to potential arbitration from the time she secured her services with T-Mobile to the inception of the instant lawsuit. She signed four documents between July 10, 2018, and January 26, 2020, that incorporated the T&Cs and arbitration provision. Dkt. #17, pp. 3, 204, 214, 221, 229. These documents included a lease agreement and an equipment installation plan. *Id*. Moreover, she assented to the most recent version of the T&Cs after making payments following T-Mobile's notifying its customers of the updated contractual language. *Id*.

In her response to defendants' motion, Ms. Franck avers that she lacked the full legal capacity to enter into a binding arbitration agreement at the time she accepted the T&Cs. Dkt. #18, p. 2. She notes that her "capacity at the time was akin to that of a minor, not a knowledgeable adult according to the law." *Id*.

Ms. Franck's assertion that she did not possess the requisite legal understanding when signing the documents is conclusory and not supported by any facts in the record. There is a high burden a plaintiff must overcome to demonstrate lack of mental capacity when executing a contract. In determining whether a party to contract had sufficient mental capacity, the presumption is that she is sane, and that presumption is overcome only by *clear, cogent, and convincing evidence*. *See Page v. Prudential Life Ins. Co. of Am.*, 12 Wn.2d 101, 109 (1942) (emphasis added).

Here, there is no evidence that Ms. Franck lacked the mental capacity to contract with T-Mobile and comply with the company's T&Cs. She was not a minor at the time

she first entered into an agreement with T-Mobile. Moreover, a barren, unsupported assertion that she did not comprehend the arbitration provision is insufficient to demonstrate that she lacked the requisite mental capacity to understand the contract.

To cinch the matter, the case cited by Ms. Franck to support her position is inapposite to this case. In *AT&T Mobility v. Concepcion*, the Supreme Court adjudicated whether a certain contract that included a class arbitration waiver was unconscionable. 563 U.S. 333, 341-343 (2011). The court never analyzed the issue of mental capacity to contract. Because Ms. Franck cannot meet the high burden to show she did not possess the capacity to understand the contract, the arbitration agreement is valid.

**B.    Scope of the Arbitration Provision**

Ms. Franck's claims also fall within the scope of the arbitration provision. The genesis of this matter is a billing issue, as Ms. Franck alleges that T-Mobile improperly suspended service of her account and refused to accept a "negotiable instrument" she allegedly tendered in lieu of a monthly payment. Dkt. # 1, ¶¶ 6, 8. The arbitration provision states that "any and all claims and disputes in any way related to or concerning the agreement . . . *including any billing disputes*, will be resolved by binding arbitration or in small claims court." Dkt. # 17, pp. 18-19 (emphasis added).

Ms. Franck makes yet another conclusory allegation in an attempt to undermine the scope of the arbitration provision: that the T&Cs do "not encompass disputes involving felonious conduct." Dkt. # 18, pp. 4, 6. There are no criminal allegations against either T-Mobile or Osvaldik in Ms. Franck's complaint or in her response to defendants' motion. This is also a civil case, as it pertains to an alleged breach of contract. Finally, the T&Cs are broad and encompass "*any and all* claims and disputes." Dkt. # 17, pp. 18-19 (emphasis added). Accordingly, even if Ms. Franck made concrete

allegations of criminal conduct on the part of defendants, such conduct would still fall within the scope of the arbitration provision.

### C. Enforceability of Arbitration Provision

Defendants claim that the arbitrator, and not the court, must be the party to rule on any arguments Ms. Franck presents as to the enforceability of the arbitration provision. The court concurs with this reasoning.

"If a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-69 (2019). The T&Cs contain an express delegation provision stating the following: "[t]he arbitrator will have the power to rule on their [sic] own jurisdiction, including any issues concerning the existence, validity, or scope of either this Agreement or the arbitration clause, including whether any claim is subject to arbitration."

Ms. Franck disputes the enforceability of the arbitration provision on the grounds that it is a dilatory tactic, insulates defendants from liability for criminal conduct, and denies the parties substantive rights under federal law. Dkt. # 18, p. 7. Given the binding case law and the court's ruling that the arbitration provision is valid, the court defers to the arbitrator to rule on any enforceability arguments.

### V.    CONCLUSION

For all the foregoing reasons, the court **GRANTS** defendants' motion to compel and **STAYS** this case in favor of arbitration. Dkt. # 15. Pursuant to the language contained in the arbitration provision, the arbitration of all disputes will be administered by the American Arbitration Association under its Consumer Arbitration Rules in effect at the time arbitration commences.

The parties are directed to advise the court of the status of arbitration within ninety (90) days of this order. If the parties fail to commence arbitration within twelve (12) months of this order, the court will dismiss the underlying claims and terminate the case. *See Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962-63 (9th Cir. 2007).

Dated this 12th day of September, 2024.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge

ORDER - 7